UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80714-CIV-MARRA

BENEFICIAL MUTUAL SAVINGS BANK,

Plaintiff,

vs.

CAROLE GIGLIOTTI, et al,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiff Beneficial Mutual Savings Bank's Motion for Summary Judgment (DE 44) and Defendants Carole Gigliotti, John Gigliotti and Ronald Gigliotti's, co-personal representatives of the Estate of Christopher J. Gigliotti, Sr., Motion for Summary Judgment (DE 63).  The motions are fully briefed and ripe for review.  The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

Two Summit Associates, L.P. ("Two Summit") is a Pennsylvania limited partnership. (Am. Compl. ¶ 9, DE 15; Answer ¶ 9, DE 17.)  In 2008, Two Summit was the owner of a leasehold interest on commercial property located at Two Summit Square, Route 413 & Doublewoods Road, Langhorne, Bucks County, PA 19047 (the "Two Summit Property")

consisting of a 20,100 square foot office/retail building in the Summit Square Shopping Center.[1] (Am. Compl. ¶ 12; Ronald Gigliotti Dep. 47-49, Ex. C, DE 46-3.) On or about July 31, 2008, Plaintiff Beneficial Mutual Savings Bank ("Plaintiff") extended a four million dollar commercial mortgage loan (the "loan") to Two Summit, as borrower. (Am. Compl. ¶ 13; Answer ¶ 13; R. Gigliotti Dep. 13, 17.) The loan is evidenced by a loan agreement (the "loan agreement") and a promissory note in the principal amount of four million dollars, dated July 31, 2008 (the "note"), executed and delivered by Two Summit to Beneficial. (Loan Agreement, Ex. D, DE 46-4; Note, Ex. E, DE 46-5.) The note provides that upon the occurrence of an event of default that the entire balance of the note, together with all interest accrued thereon and all other sums due or owed by Two Summit will become due and payable immediately with interest, plus reasonable attorney's fees for the costs of suit. (Note ¶ 7.) The note further provides that Plaintiff may include such attorney's fees and costs of suit in any complaint filed or entered pursuant to the note. (Id.)

The loan was conditioned on, among other things, the granting of an open-end leasehold mortgage and security agreement dated July 31, 2008 on the property (the "mortgage"), which was duly recorded on August 18, 2008, with the recorder of deeds, Bucks County, Pennsylvania

---

[1] According to Defendants, Two Summit owns the improvements (i.e., the building and appurtenances) only and leases the real property pursuant to a ground lease. (R. Gigliotti Dep. 47-48; R. Gigliotti Decl. ¶ 4, DE 50-1.) Plaintiff states that Two Summit holds all rights, title and interest in the "Tenants Estate" as defined in the ground lease dated November 27, 2007, by and between Two Summit, as tenant, and its landlord, Summit Square Associates. (Ground Lease, Ex. O, DE 57-1; Sept. 24, 2012 Kenneth Swedler Aff. ¶¶ 6-7, DE 72-1; R. Gigliotti Dep. 47-48.) The Court does not believe there is any substantive legal distinction between the two descriptions. In any event, to the extent there is a substantive legal distinction between the two descriptions, the Court accepts Defendants' description as the correct one for purposes of resolving this motion.

in Book 5887, p. 1182 and a collateral assignment of leases of duly recorded in Book 5887, p. 1215.[2] (Loan agreement ¶ 1.02(b)(1)-3); Mortgage, Ex. M, DE 46-13; Assignment between Two Summit and Plaintiff, ¶ 5, Ex. P, DE 57-2.)  The loan was further conditioned on the granting of certain collateral security and the delivery of suretyship/guaranty agreements from decedent, Christopher J. Gigliotti, Sr., Ronald Gigliotti and John Gigliotti (collectively, the "guarantors") to Plaintiff.  (Loan agreement ¶ 1.02, 2.01(b)(v).)

Decedent executed and delivered to the bank a suretyship/guaranty agreement dated July 31, 2008 (the "decedent suretyship agreement").[3] (R. Gigliotti Dep. 54–57; Ex. F, Suretyship/Guaranty Agreement, DE 46-6; J. Gigliotti Dep. 13-16.)

The decedent suretyship agreement provides that:

> [The decedent] hereby, irrevocably, unconditionally, and absolutely guaranties to Beneficial (a) the prompt payment of principal sum due to Bank from Borrower under the Note, together with all interest due and becoming due thereon; (b) the prompt payment of all other sums due and becoming due to Bank under the terms of any of the Loan Documents; (c) the prompt and complete compliance with the performance by Borrower of all representations, warranties, covenants, agreements, and other obligations to Bank under the terms of any of the Loan Documents. The payment, compliance, and performance obligations hereinabove guaranteed by the undersigned are hereinafter collectively referred to as the "Guaranteed Obligations."
>
> . . . .

---

[2] Defendants point to the following language of the mortgage:

> If an Event of Default shall occur, Mortgagee may, at its option, after service of a Notice, receive and collect all such rents, income and profits as they become due, from the Property . . . Mortgagee shall apply the rents received from Borrower's lessees, to accrued interest and principal under the Note.

(Mortgage.)

[3] Decedent, John Gigliotti and Ronald Gigliotti each signed separate suretyship agreements. (Am. Compl. ¶ 17, Answer ¶ 17; J. Gigliotti Dep. 12-13, DE 46-7.)

This [Agreement] shall constitute an agreement of suretyship as well as of guaranty and, except as herein set forth, shall constitute an absolute and unconditional undertaking by the undersigned as surety with respect to payment and performance of the Guaranteed Obligations by Borrower. The liability of the undersigned hereunder shall be direct and may be enforced without [Plaintiff] being required to resort to any other right, remedy or security. . . .

The [decedent] expressly agrees that the validity of this Guaranty shall in no way be terminated, affected or impaired by reason of the assertion of or failure to assert by Bank against Borrower, or its successors or assigns, any of the rights or remedies reserved pursuant to the Note, the Mortgage or any other Loan Document or otherwise available to Bank at law or in equity….

Until all of the Guaranteed Obligations are completely fulfilled to the satisfaction of Bank and each and every one of the terms, covenants, and conditions of this [Agreement] are fully performed, the liability of [decedent] under this [Agreement] shall not be released, discharged or in any way impaired by (a) Any amendment or modification of or supplement to or extension of renewal of the Note or any other Loan Document and any agreements made or to be made between Bank and Borrower with respect to the Guaranteed Obligations; (b) Any exercise or non-exercise by Bank of any right, power, remedy or privilege under or in respect of the Note or any other Loan Document of this Guaranty or any waiver, consent or approval by Bank with respect to any of the covenants, terms, conditions or agreements contained in the Note, or any other Loan Document or any indulgence, forbearance or extensions of time for performance or observance allowed to Borrower from time to time and for any length of time; (c) Any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or similar proceeding relating to Borrower or its successors, assigns, properties or creditors; (d) Any transfer by Borrower of any of Borrower's interests in the Premises; (e) Any act or circumstances which might, but for the terms and provisions of this Section [ ], might be deemed a legal or equitable discharge of the undersigned.

 The [decedent] hereby expressly waives and surrenders any defenses to the undersigned's liability hereunder based on any of the foregoing acts, omissions, agreements, or waivers by Bank, it being the purpose and intent of this Guaranty that the obligations of the undersigned hereunder are absolute and unconditional.

. . . .

No enforcement of rights and remedies under this Guaranty or any of the Loan Documents shall constitute an irrevocable election of remedies by [Plaintiff]. [Plaintiff] shall not be obligated to marshal remedies or assets as a condition to enforcing the liabilities incurred hereunder against the [decedent]. . . .

(Suretyship/Guaranty Agreement ¶¶1, 3-4.)

The decedent suretyship agreement also provides, in pertinent part, that ". . . Guarantor's liability, although joint and several. . ." would be limited to 50% of the "guaranteed obligations." (Id. at ¶ 2(b).) The decedent suretyship agreement further states that decedent "irrevocably waive[d] any notices of (a) any presentment, demand, protest, notice of protest and of dishonor, notices of default, and all other notices with respect to any of the Guaranteed Obligations, and prosecution of any enforcement proceeding, including any proceeding in any court, against Borrower or any person or entity with respect to any of the Guaranteed Obligations." (Id.)

Two Summit defaulted under the note by failing to make payments due and owing to Plaintiff. (R. Gigliotti Dep. 32-33; J. Gigliotti Dep. 16, Ex. G, DE 46-7.) By written notice dated January 7, 2010, Plaintiff apprised Two Summit and the guarantors of their respective failures to make payments due and owing to the bank under the note and guaranty agreements, and of Plaintiff's election to accelerate the obligations due and owing to Plaintiff under the note (the "default notice"). (Jan. 7, 2010 letter, Ex. H, DE 46-8.) The default notice specifically set forth the bases for default under the note and guaranty agreements, and provided Two Summit and the guarantors with a period of ten days to cure. (Id.) Neither Two Summit nor the guarantors cured the default. (July 6, 2012 Swedler Aff. ¶ 15, Ex. N, DE 48-1.)

On May 19, 2012, Plaintiff obtained a confession of judgment[4] against Two Summit in the amount of $4,065,258, 52, plus continuing interest, costs and fees, in the matter captioned Beneficial

---

[4] A "confession of judgment" refers to a written agreement between a lender and a borrower that allows the lender to summarily enter judgment against the borrower upon the occurrence of a stated event, usually default under the terms of a loan agreement or lease. The lender then files a summary action entitled "confession of judgment." Black's Law Dictionary (9th ed. 2009).

Mutual Savings Bank v. Two Summit Associates, LP, Court of Common Pleas, Bucks County, Pennsylvania, Case Number 2010-05016 (the "judgment"). The judgment has not been challenged. (Judgment, Ex. I, DE 46-9.)  Plaintiff has exercised its rights under the collateral assignment of leases dated July 31, 2008 and collected rents from the Two Summit Property. (July 6, 2012 Swedler Aff. ¶ 18.)  Plaintiff has neither taken possession of the Two Summit Property as mortgagee nor assumed the obligations of a landlord. (Id. at ¶ 19.)  On May 17, 2011, Plaintiff exercised its right of setoff and collected $82,721.24 from John Gigliotti's bank account at Plaintiff. (Id. at ¶ 20.)

According to Plaintiff, the amounts due and owing by Two Summit as of June 16, 2011 are as follows:

| | |
|---|---|
| Principal: | $3,879,734.35 |
| Interest from 12/01/09 to 1/16/10 @ Note rate @3.75% | 19,044.86 |
| Interest from 1/17/10 to 06/16/11 @ Default rate @ 8.75% | 496,662.26 |
| Less Credit towards the 1/1 payment | (781.15) |
| Less Rents collected and Held in Escrow | (194,676.02)[5] |
| Late Fees | 23,971.76 |
| Property Management Fee | 1,750.00 |
| Legal Fees Due | 43,604.33 |
| Mortgage Satisfaction Fee | 55.50 |
| TOTAL: | $4,269,365.89 |

(Id. at ¶ 21.)

According to Defendants, Plaintiff has been collecting rents that were previously due and owing to the borrower, which are being held in escrow. (R. Gigliotti Dep. 79-80; J. Gigliotti Dep. 20-21; R. Gigliotti Decl. ¶¶ 2, 9.)  Plaintiff has collected at least $441,458.31 since June 19, 2012.

---

[5] Plaintiff has filed a supplemental affidavit updating these numbers as of July 30, 2012, making the amount owed $4,447,856.58. (August 2, 2012 Swedler Aff. ¶ 18, DE 57-3.)

(R. Gigliotti Decl. ¶ 9.) According to Defendants, Plaintiff has impaired the collateral. (J. Gigliotti Dep. 22, 25-27; R. Gigliotti Decl. ¶ 3.)

Plaintiff states that it did not impair the collateral and that the mortgage and assignment provide that Plaintiff had no obligation to care for, manage or control the property, and to the extent Plaintiff has done so, it has been at Plaintiff's discretion. (Mortgage ¶ 23; Collateral Assignment of Leases ¶ 5, Ex. P, DE 57-2.) Defendants accuse Plaintiff of failing to pay rent and make commercial area maintenance payments pursuant to the ground lease and making the property subject to the possibility of foreclosure. (R. Gigliotti Dep. 48; R. Gigliotti Aff. ¶ ¶ 5-6; J. Gigliotti Dep. 22.) In contrast, Plaintiff states that Two Summit, as tenant, failed to pay rents in accordance with the ground lease and that it is the responsibility of the mortgagee to control, care, manage and repair the property. (Ground lease ¶ 3.1; Mortgage ¶ ¶ 2-3, 23.)

Decedent died on December 27, 2010. (Am. Compl. ¶ 2; Answer ¶ 2; R. Gigliotti Dep. 5.) The administration of the estate of decedent is pending in the Circuit Court for Palm Beach, Florida, Probate Division, File Number 50, 2011 CP 000237xxxx5B. (Am. Compl. ¶ 3; Answer ¶ 3.)

Plaintiff moves for summary judgment on the basis that Two Summit defaulted under the Note by failing to make payments due and owing to it and decedent is liable for 50% of the guaranteed obligations pursuant to the executed suretyship agreement. Plaintiff also seeks attorney's fees, late fees, property management fees and costs and interest. In response, Defendants argue that Plaintiff impaired the collateral, which extinguishes the obligation of the surety. Defendants state that Plaintiff failed to give credit against the principal for the rents it collected. Defendants also move for summary judgment. They contend that the guaranty agreement did not waive the impairment of collateral defense

7

<u>II.  Summary Judgment Standard</u>

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp.</u>, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  <u>Id.</u> at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Electronic Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  <u>Anderson</u>, 477 U.S.

at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

The Court begins its analysis by noting that the parties do not disagree that Two Summit defaulted under the Note. (Pl. Statement of Facts ¶ 16, DE 45;[6] R. Gigliotti Dep. 32-33; J. Gigliotti Dep. 16.) Nor do the parties disagree that New Jersey law governs the guaranty and suretyship agreements at issue. (DE 44 at 7; DE 63 at 6.)

"To be entitled to a judgment on a guaranty, a plaintiff must demonstrate: (1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee); (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligator and (5) written demand for payment on the guarantee." U.S. on Behalf of Small Business Admin. v. DelGuerico, 818 F. Supp. 725, 727-28 (D. N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8–14 and 38 Am. Jur.2d § 119); see Consolidated Brick & Bldg. Supplies, Inc. v. Alosi Const. Inc., No. 05-1490 (MLC), 2006 WL 2135805, at *6 (D. N.J . July 28, 2006). Here, there is no question that decedent executed the suretyship agreement and

---

[6] Defendants do not controvert this statement of fact. Because this fact is undisputed, the Court need not address the question of whether the Pennsylvania confession of judgment is evidence of the primary obligor's default under the Note and the amount due and owing under the Note at the time of that judgment. (DE 44 at 9; DE 50 at 5-6; DE 55 at 5.) While Defendants claim that Plaintiff cannot use the default judgment to trigger liability under the guaranty (DE 50 at 6-7), Plaintiff states it is not attempting to enforce the default judgment (DE 55 at 4-5).

guaranteed to Plaintiff the payment of the principal sum and other sums due under the terms of the loan agreement to Plaintiff, limited to 50% of the guaranteed obligations, as well as compliance with performance obligations. (Suretyship agreement.) Nor is there any question that Plaintiff made a written demand for payment. (Jan. 7, 2010 letter.)

Defendants, however, raise the issue of whether Plaintiff impaired the collateral and therefore rendered the suretyship extinguished. Specifically, Defendants claim that Plaintiff impaired the collateral by: (1) failing to make payments to maintain the elevators; (2) failing to provide upkeep to the building; (3) failing to pay the phone company's bill which caused a tenant's fire alarm to trigger every thirty seconds and (4) failing to pay bills to keep the lights on. (DE 64 at ¶¶ 7-8.) There is no support in the record for this defense because Plaintiff had no legal or contractual obligation to perform these tasks. Plaintiff was not the landlord of the subject property, in privity with vendors who supplied services to Two Summit, nor was it a tenant under Ground Lease between Two Summit and its landlord, Summit Square Associates, or a mortgagee-in-possession. (Mortgage ¶ 23 ("Nothing contained herein shall be construed to constitute [Plaintiff] as a mortgagee-in-possession in absence of its physically taking possession of the Property."); Assignment between Two Summit and Plaintiff ¶ 5 ("Notwithstanding any legal presumption to the contrary, [Plaintiff] shall not be obligated by reason of its acceptance of this Assignment to perform any obligation of the Assignor as landlord under the leases."); July 6, 2012 Swedler Aff. ¶ 19, DE 48-1 ("[Plaintiff] has neither taken possession of the Two Summit Property, nor assumed the obligations of a landlord").) There is no record evidence that any other entity besides Two Summit was responsible for maintenance of the property or rent payments under the Ground Lease. Furthermore, the mortgage provides that even if Plaintiff opted to collect rents to protect its security,

nothing required Plaintiff to "incur any expense or take any action hereunder." (Mortgage ¶ 8.) The mortgage also provided that upon a default, Plaintiff "may apply" any funds to pay impositions or use the funds as a credit against sums secured by the mortgage.[7] (Mortgage ¶ 2.) Although Plaintiff has collected rents pursuant to the Assignment between Two Summit and Plaintiff, it has not taken possession of the Two Summit Property nor assumed the obligations of a landlord. (July 6, 2012 Swedler Aff. ¶¶ 18-19.) Hence, because Plaintiff had no responsibility for maintaining the property, and thus no obligation to undertake any of the actions of which Defendants complain, Defendants cannot defend against the claim for breach of the suretyship agreement on the basis that Plaintiff impaired the collateral. Because Plaintiff did not have an obligation to maintain the collateral, any argument arising out of Defendants' allegation that Plaintiff impaired the collateral is rejected.

The only question that remains is the amount owed. Because the amounts of rent collected, as well as interest and fees have undoubtedly changed since the briefing of this motion, the Court can only decide liability as a matter of law.[8] The Court requests the parties attempt to agree on the amount owed and provide the Court with a proposed judgment. If the parties cannot agree on the amount owed, the Court will hold a trial on damages.

---

[7] While Defendants claim that Plaintiff failed to pay rents pursuant to the Ground Lease, they do not provide the provision of the Ground Lease that requires Plaintiff to pay these rents. R. Gigliotti Decl. ¶ 5.) In fact, the Ground Lease provides that the mortgagee has no obligation to cure any default of the tenant. (Ground Lease ¶ 5.2(i).)

[8] Complicating the analysis is the fact that, in response to Plaintiff's motion, Defendants argue that Plaintiff has failed to give credit for rents Plaintiff collected (DE 50 at 9-10) and Plaintiff's reply memorandum states that it has updated the amount owed based, in part, on credits for rents collected (DE 55 at 3 n.3). Because Defendants did not have an opportunity to inform the Court whether it agrees with this updated amount owed, the Court is unable to determine, as a matter of law, the amount of damages owed to Plaintiff.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff's Motion for Summary Judgment (DE 44) is **GRANTED IN PART with respect to liability AND DEFERRED IN PART with respect to damages.**

2) Defendants ' Motion for Summary Judgment (DE 63) is **DENIED.**

3) **Within 14 days of the date of entry of this Order**, the parties shall inform the Court whether they agree on the amount owed by Defendants to Plaintiff or whether it will be necessary to conduct a trial on damages. If the parties agree, they shall file a proposed judgment at that same time.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of January, 2013.

_____
KENNETH A. MARRA
United States District Judge